UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SKG International, Inc.,

      Plaintiff,

v.                                                    Civil Case No. 16-14510

SKG Italia, S.p.A., *et al.*,                         Sean F. Cox
                                                      United States District Court Judge
      Defendants.
_____/

**OPINION & ORDER**
**DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING**
**ORDER/PRELIMINARY INJUNCTION**

Plaintiff SKG International, Inc. ("International") filed this action against Defendants

SKG Italia, S.p.A. ("Italia") and Michele Bernini (collectively "Defendants") on December 30,

2016. On that same date, International filed a Motion for Temporary Retraining

Order/Preliminary Injunction and a motion asking the Court to expedite the motion. This Court

held an evidentiary hearing and heard oral argument on January 19, 2017, and January 20, 2017.

For the reasons set forth below, the Court DENIES Plaintiff's motion.

**BACKGROUND**

Plaintiff International filed this action against Defendants Italia and Michele Bernini on

December 30, 2016. On that same date, International filed a Motion for Temporary Retraining

Order/Preliminary Injunction and a motion asking the Court to expedite the motion.

International's Verified Complaint contains the following four counts, asserted against

Defendants:

1

- "Count I – Injunctive Relief" – wherein International asks the Court to issue a TRO and/or preliminary injunction that: 1) requires Italia to supply components/products to International; and 2) prohibits Italia from communicating or contacting International's customers regarding the supply of components.

- "Count II – Breach of the Licensing Agreement" – asserted against Italia, wherein International asserts that Italia breached the parties' License Agreement by: 1) refusing to provide supplier and cost information; 2) by contacting, communicating, and soliciting its customers; and 3) committing other breaches concerning payments. This Count seeks monetary damages and an award of attorney fees.

- "Count III - Intentional Interference with Contractual Relationships and Business Expectancies" – asserted against Italia, wherein International asserts that Italia has wrongfully and maliciously interfered with its contractual relationships and business expectancies with its customers. This Count seeks monetary damages and attorney fees.

- "Count IV – Breach of Fiduciary Duty" – asserted against Michele Bernini, wherein International asserts that he has breached his fiduciary duties to it in a number of different ways. This Count seeks monetary damages and an award of attorney fees.

This Court held a conference with the parties on January 9, 2017. During that conference, the Court explored settlement of the preliminary injunction motion with the parties. Although the Court was preparing for a criminal Medicare fraud trial that was to commence the following day, the Court devoted the better part of a full day to that conference. During that conference, International's counsel stated that International was in the process of obtaining a letter of credit. The parties were unable to come to any kind of resolution as to the requested preliminary injunction.

This Court then scheduled the pending Motion for TRO/Preliminary Injunction for January 18, 2017. The Court also ordered the parties to submit the following materials to the Court prior to the hearing: 1) witness lists; 2) exhibit lists; and 3) proposed findings of fact and conclusions of law. Specifically, the Court ordered:

2

**IT IS FURTHER ORDERED** that Defendants shall file their response to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction no later than Thursday, **January 12, 2017, at 5:00 p.m.**

**IT IS FURTHER ORDERED** that, no later than **January 13, 2017, at 1:00 p.m.**, each party shall file: 1) a Witness List, that lists each witness that may be called at the January 18, 2017 hearing, along with a short summary of the expected testimony, and an estimate of the length of the expected testimony, of each witness; 2) an Exhibit List, listing each exhibit that may be presented at the January 18, 2017 hearing; and 3) Proposed Findings of Fact and Conclusions of Law, set forth in separately-numbered paragraphs.

**IT IS FURTHER ORDERED** that two (2) courtesy copies of each of the above filings shall be delivered to the Court on the dates that the filings are due.
**IT IS SO ORDERED.**

(D.E. No. 13) (emphasis in original).

Defendants filed all of their required materials as ordered by the Court. That included Defendants' response to the motion and an Affidavit of Olivia Bernini. (D.E. No. 15-1).

When Plaintiff had not filed anything by late afternoon on January 13, 2017, this Court issued a Show Cause Order, requiring Plaintiff to show cause by 5:00 p.m. why the Court should not deny the motion and cancel the hearing. (D.E. No. 20).

Thereafter, Plaintiff's Counsel filed its materials, along with a "Motion for Acceptance of Late-Filed Witness List, Exhibit List, and Proposed Findings of Fact and Conclusions of Law." (D.E. No. 24). Contrary to the Court's order, however, Plaintiff did not provide any estimate for the length of time that Plaintiff would need to examine its two witnesses. The Court had requested that information from the parties because the Court was attempting to schedule the evidentiary hearing around the criminal jury trial and matters relating to that case.

The Court held an evidentiary hearing, and heard oral argument from counsel, on January

3

19, 2017, and January 20, 2017.

At the evidentiary hearing, International presented two witnesses, who were cross-examined by Defense Counsel: 1) Steve Tarino, the Chief Financial Officer and a Director of International; and 2) Fariborz Kayyod, International's Chief Executive Officer.  Defendants presented two witnesses, who were cross-examined by International's Counsel: 1) Olivia Bernini, who serves a member of the Board of Directors of Italia and has senior management responsibility of its operations; and 2) Michele Bernini who works in research and development for Italia and is a chairmen of International.  The Court also received a number of exhibits.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having heard and observed the witnesses who testified at the evidentiary hearing, allowing for this Court to assess credibility, having considered the exhibits submitted by the parties, having reviewed all matters of record for this case, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law, for purposes of the pending motion.[1]

## FINDINGS OF FACT

Italia manufactures and sells component and finished parts that are used in automotive heating, ventilation, and air-conditioning systems ("HVAC") world-wide.  Italia's automotive products use Italia's confidential intellectual property, which includes specifications and designs, which were developed through many years of design, engineering, coordination with suppliers, and quality control.

---

[1]A trial court's findings of fact and conclusions of law in granting or denying a motion for preliminary injunction are not binding at a trial on the merits.  *United States v. Edward Rose and Sons*, 384 F.3d 258, 261 (6th Cir. 2004).

Prior to the formation of International and execution of the License Agreement, Italia's customer base included Valeo Group ("Valeo"), Keihin Thermal Technology of America, Inc. ("Keihin"), and Modine Manufacturing Company ("Modine").

In 2013, Italia had the necessary intellectual property and expertise in the manufacturing process to expand its business into North America. But it needed a financial partner and local management. Italia was introduced to Kayyod and Tarino as potential partners.

On or about November 1, 2013, Italia, along with Bell the Cat (an entity owned by Kayyod) and MCP SKGI, LLC (an entity owned by Tarino), formed International and entered into a Shareholders' Agreement. (Def.'s Ex. 1). The intent of the shareholders was to form a company (International) that would source its own components and manufacture, assemble, and sell automotive parts, based on Italia's intellectual property, in North America, South America, and Central America.

On that same date, Italia and International entered into a written "License and Technology Transfer Agreement" ("the License Agreement") (Def.'s Ex. 2).

During the term of the License Agreement, International had the right to use Italia's intellectual property to source its own materials and manufacture products. Specifically, the Licensing Agreement provided:

> (a)  Licensed Technology Transfer. Immediately, upon commencement of this Agreement and for a period of fifteen (15) years thereafter, the Licensor will use its reasonable commercial efforts to effectuate the transfer of the Licensed Technology by meeting with, discussing with and assisting the Licensee:
>
> (i)  to ensure the proper communication of requirements on Product design, Product features, performance, price and/or other requirements to Product sales process;
>
> (ii)  to ensure the timely development and assistance in certification (if applicable) of new Products to Licensee's or customers'

5

specifications and the procurement and delivery of samples, as
required;

(iii)     to ensure the timely development of the manufacturing process
necessary for the manufacture of the Products by Licensee which
may incorporate all relevant information pertaining to the relevant
Product, which may include, without limitation: development
schedules, product specifications and tooling specifications,
purchase terms, long-lead time components, qualified suppliers
and quality requirements.

(iv)     to assist Licensee in developing the quality standards and
test specifications for the Products.

Notably, the Licensing Agreement *does not* require Italia to sell or supply any parts,

components, or products to International.

The Licensing Agreement required International to pay Italia a "royalty of three percent

(3%) of any and all Gross Revenues derived from any and all sources in connection with the

Products in consideration for the obligations of Licensor under Section 2A." (Ex. A of

Licensing Agreement). In sum, as Fayyod testified at the evidentiary hearing, International was

required to pay a 3% royalty to Italia for all of the products that International sold. The

Licensing Agreement provided that International was to make the royalty payments on a

quarterly basis, and that International's payments were to be accompanied by royalty reports.

Exhibit B to the Licensing Agreement provides that the territory covered by it "shall be

North America, South America and Central America and their respective territories." (*Id.* at 24).

The Licensing Agreement provides that:

(d)     Licensor agrees that, during the term of this Agreement, it shall not,
within the Territory, compete with the business of the Licensee or solicit
any customer, vendor or employee of the Licensee.

(Licensing Agreement at ¶ 6(d)).

The Licensing Agreement provides that Italia has the right to terminate the agreement,

6

upon written notice to International and failure to cure, for failure to make payments due or

provide royalty reports to Italia:

> 10.2    Licensor's Right to Terminate for Breach.  Without prejudice to any other
> rights which Licensor may have, Licensor shall have the right to terminate
> this Agreement upon written notice to Licensee, subject to Licensee's
> rights to cure set forth herein:
>
> (a)    If Licensee shall fail to make any payment due hereunder
> or to deliver any of the Royalty Reports herein referred to,
> and if such default shall continue for a period of thirty (30)
> days after receipt of written notice of such default by
> Licensee.

(Licensing Agreement at 14).  It also provides that either party may terminate the agreement if

there is a material breach by the other side, upon 30 days written notice and failure to remedy the

breach.  (*Id.*).

The Licensing Agreement provides that, upon the termination of the agreement pursuant

to Section 10.2, Italia may immediately discontinue its obligations under Section 2A.  (Licensing

Agreement at 15).

International sells eight different products.  The products that International sells to its

customers have various component parts that are supplied by others.

After the License Agreement was executed, Italia provided International with design

drawings, component specifications, "engineering know-how," and various trade secrets.

The parties had frequent communications wherein Italia provided guidance and

assistance to International.  Italia sent engineers to International's facility in Jaurez, Mexico to

assist International.

Italia also provided International with the names of its various suppliers.  At various

times, however the parties disagreed as to whether Italia had provided sufficient information as

7

to all of its suppliers.

Italia also introduced International's employees to Italia's customers, including Valeo, Keihin, and Modine.  For example, Michele Bernini personally took representatives of International to Valeo.  Thereafter, International succeeded in obtaining orders from Valeo, Keihin, and Modine.

Nevertheless, for a variety of reasons, by 2014, International was not capable of purchasing from suppliers all of the components that it needed to provide its customers with its products.  To temporarily assist International, Italia agreed that International could submit purchase orders for some components and products to Italia at agreed-upon prices.

International made purchases from Italia beginning in 2014, and Italia allowed International to make those purchases on credit.  In the beginning, Italia allowed 60 day credit terms.

In addition to providing supplier information for various components, Italia urged International to contact those suppliers and arrange to purchase the components directly from the supplier, rather than purchase through Italia.  (*See, e.g.* Def.'s Exs. 5 & 6).

As time went on, Italia continued to provide International with requested supplier information.  By at least January of 2016, International had all of the supplier information it had requested from Italia.  (*See* Def.'s Ex. 9 and Fayyod's 1/20/17 testimony).

Italia also introduced International to its various suppliers, and had its employees physically accompany International to visits with those suppliers.

By January of 2016, International was failing to timely pay Italia's invoices for goods sold and delivered.  As a result, Italia reduced International's credit limit with Italia and gave it

8

less favorable payment terms.

On May 17, 2016, Italia sent International a notice of material breach of the License Agreement, including its failure to pay royalties and provide royalty reports. (Defs.' Ex. 13). International received that letter, but did not respond to it. After receiving the letter, International did not pay royalties, or submit royalty reports, to Italia.

On June 22, 2016, Italia sent International written notice terminating the License Agreement. (Defs.' Ex. 14). That letter stated that the termination was effective immediately. (*Id.*).

In September of 2016, International and Italia participated in a mediation in Boston, Massachusetts. The parties were unable to resolve their disputes concerning unpaid royalties, unpaid invoices, and other issues.

On November 24, 2016, Italia informed International that it would not ship any product to it unless and until all outstanding invoices were paid. (Defs.' Ex. 18). International did not pay the outstanding invoices to Italia.

On December 22, 2016, Counsel for Italia sent International a letter, noting, among other things, that Italia had terminated the License Agreement effective June 22, 2016. (Def.s' Ex. 22). The letter also referenced the failed mediation effort in Boston. Italia advised International that Italia's long-term customer Valeo had informed Italia that Valeo intends to hold Italia responsible for all indirect and indirect costs incurred by Valeo resulting from International's failure to deliver products. As a result, Italia advised that it has no choice but to supply products to Valeo. Counsel for Italia further explained, however, that as a showing of good faith and fair dealing, Italia would place all profits received from such sales into a separate account, pending

9

the resolution over disputes under the Shareholders Agreement and the Licensing Agreement.

International currently purchases some of the components it needs to make its products from its own suppliers.

International anticipates that, by mid-April of this year, it will be able to purchase all of the components it needs to make its products from its own suppliers.

International does not know how many components it will need to purchase in order to meet its customers' needs through May of 2016. It estimates it would need at least $600,000.00 worth of components from Italia.

Of the eight different products that it makes, International still has four of those products in stock. For the other four products, International has run out of various components that it needs to make the products.

International has not paid any royalties to Italia since the License Agreement was signed. Although International has had sales of approximately 4.5 million U.S. dollars during the last two years (2015 and 2016), International has not made any royalty payments to Italia for those sales.

In addition, International currently owes Italia approximately $200,000.00 for unpaid invoices for components and/or products.

International claims that Italia has solicited business within in its territory since December of 2016. (*See* Kayyod 1/20/16 Hrg. Tr.). International does not claim that Italia attempted to solicit any of its customers prior to the June 22, 2016 Notice of Termination from Italia. Rather, Fayyod testified that the communications between Italia and Valeo, K and Modine that International objects to were all after Italia's June 22, 2016 letter terminating the

License Agreement.

During the past year, International has experienced cash flow problems that have impeded its ability to operate.  International continues to experience cash flow problems.  As of January 20, 2017, International had begun laying off staff due to its financial problems.

Since December of 2016, International has been attempting to secure a letter of credit with a private lender, in the amount of $400,000.00, but has been unable to do so.

## ANALYSIS AND CONCLUSIONS OF LAW

**I.      The Standard Applicable To Motions For Preliminary Injunctions**

"A preliminary injunction is an extraordinary measure that has been characterized as 'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (citation omitted).

The primary purpose of a preliminary injunction is to maintain the status quo until a decision on the merits can be reached.  *See University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp*., 511 F.3d 535, 542 (6th Cir. 2007).  In other words, a district court issues a preliminary injunction in a lawsuit to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits. *Dataphase Sys., Inc. v. C L Sys, Inc.* 640 F.2d 109, 113 & n.5 (8th Cir. 1981) (en banc).

In considering a motion for preliminary injunction, a district court must balance the following four factors: 1) whether the movant has a strong likelihood of success on the merits of the claims asserted in the action; 2) whether the movant would suffer irreparable injury without the injunction; 3) whether the issuance of the injunction would cause substantial harm to others;

and 4) whether the public interest would be served by the issuance of the injunction. *Tenke*, 511 F.3d at 542. Those factors are not prerequisites, but are factors that are to be balanced against each other. *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

The movant bears the burden of demonstrating its entitlement to the preliminary injunction sought, and its burden is a heavy one. A preliminary injunction is an extraordinary remedy, which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it. *Leary v. Daeschner,* 228 F.3d 729, 739 (6th Cir. 2000).

Fed. R. Civ. P. 65(c) provides that a court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." In the Sixth Circuit, this rule is discretionary. *Moltan Co. v. Eagle-Picher Indus., Inc*., 55 F.3d 1171, 1176 (6th Cir. 1995) ("While we recognize that the language of Rule 65(c) appears to be mandatory, and that many circuits have so interpreted it, the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security.").

## II.    International Cannot Obtain The Requested Preliminary Injunctive Relief, As To The Supply Of Components/Products, Because There Is An Insufficient Nexus Between The Injunctive Relief Sought And International's Underlying Claims.

In opposing International's motion, Italia asserts that International's requested relief should be denied because there is "a total disconnect" between the relief sought by International in connection with its Breach of Licensing Agreement Count (the only claim identified by International as the one it has a substantial likelihood of success upon) and the injunctive relief that it seeks in the pending motion. Italia asserts that "International does not seek an order to

12

enforce a supply agreement, but instead seeks an order *creating* one." (Defs.' Br. at 2) (emphasis in original). Italia asserts that the pending motion must be denied because, among other things, the principal relief sought by International – compelling the supply of components and/or products – is not related to the underlying claims for breach of the License Agreement and does not preserve the status quo.

The Court agrees.

This Court's equitable power lies only over the merits of the claims before it. A preliminary injunction is appropriate when it grants relief of the same nature as that to be finally granted. *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945). Several circuits, including the Sixth Circuit, require a plaintiff to "establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *Colvin v. Caruso*, 605 F.3d 282, 299-300 (6th Cir. 2010); *Pacific Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015). The concept is straightforward:

> [T]here must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint. This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself. The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant "relief of the same character as that which may be granted finally." *De Beers Consol. Mines*, 325 U.S. at 220, 65 S.Ct. 1130. Absent that relationship or nexus, the district court lacks authority to grant the relief requested.

*Pacific Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015).

International's Motion for Preliminary Injunction asserts that International is likely to succeed on the merits of its Breach of Licensing Agreement claim (*See* D.E. No. 3-2 at Pg ID 98-

100).   In Count II, International asserts that Italia breached the parties' Licensing Agreement by: 1) refusing to provide supplier and cost information; 2) by contacting, communicating, and soliciting its customers; and 3) committing other breaches concerning payments.

Notably, it is undisputed that there was never a supply contract between the parties. Thus, International's Breach of Licensing Agreement Count *does not* assert that Italia breached the parties' agreement by failing to supply it with components or products.

Moreover, Count II, like all of International's substantive[2] counts in this action, seeks only monetary damages and an award of attorney fees.  As Italia notes, International's Breach of Licensing Agreement Count does not seek any injunctive relief in connection with the claimed breaches, such as specific performance of any of Italia's contractual obligations under the Licensing Agreement.  (*See* D.E. No. 15 at Pg ID 228).

Accordingly, even if International ultimately prevails on its Breach of Licensing Agreement Count in this action, it could not obtain the injunctive relief it is seeking now[3] – a court order requiring Italia to supply International with components and/or products, and on favorable payment terms, despite any contractual obligation to do so.[4]

Thus, the preliminary injunction requested by International does not seek relief of the

---

[2]International's Complaint purports to include four counts.  Count I is titled "Injunctive Relief."  But it is well-established that injunctive relief is a remedy – not an independent cause of action.  *See, e.g. Goryoka v. Quicken Loan, Inc*., 519 F. App'x. 926, 929 (6th Cir. 2013).

[3]Essentially, International asks the Court to create a requirements contract, where one does not exist.

[4]The same is true for International's other claims.  If International prevails on its tortious interference claim, or its breach of fiduciary duty claim against Michele, that would entitle International to monetary damages, not the injunctive relief requested in the pending motion.

same character as that which may be granted finally, when International's claims are adjudicated in this action.  International cannot obtain the requested preliminary injunction, as to the supply of components and products, because there is an insufficient nexus between the injunctive relief sought and International's underlying claims.

### III.  In Addition, The Requested Preliminary Injunction Is Impermissibly Vague On Its Face.

Moreover, even if this Court were inclined to grant injunctive relief to International (which it is not), the injunctive relief requested by International is impermissibly vague and broad.

International's motions asks the Court to issue a preliminary injunction that would order the following injunctive relief against Italia:

> NOW, THEREFORE, IT IS ORDERED that Defendant Italia, and anyone acting in concert or cooperation with Defendant Italia who receives actual notice of this Order, shall immediately cease and desist from taking any action to interrupt the supply of *component parts and products to Plaintiffs as required to allow Plaintiff to manufacture its products* and supply its customers under the terms of Plaintiff's contracts with its customers, and that Defendant Italia shall continue to deliver *such component parts and products in the amounts necessary to supply Plaintiff's customers*, under purchase orders which shall contain standard industry payment terms of net 60 days and prices *as set forth in prior purchase orders* without cost mark-up, until June 1, 2017, or further order of the Court.
>
> IT IS FURTHER ORDERED that Defendant Italia, and anyone acting in concert or cooperation with Defendant Italia who receives actual notice of this Order, shall not have any communications with any customer of Plaintiff related to any of Plaintiff's products, contracts, or financial information, and that Defendant Italia, and anyone acting in concern or cooperation with Defendant Italia who receives actual notice of this Order, shall not compete with the business of Plaintiff or solicit any customer, vender or employee of Plaintiff.

(D.E. No. 3-1 at Pg ID 82-83) (emphasis added).

Requirements for the form and content of a proper injunction are set forth in Fed. R. Civ.

P. 65:

> (d) Contents and Scope of Every Injunction and Restraining Order.
>
>> (1) Contents.  Every order granting an inunction and every restraining order must:
>>> (A) state the reasons why it issued;
>>>
>>> (B) *state its terms specifically*; and
>>>
>>> (C) *describe in reasonable detail – an not by referring to the complaint or other document – the act or acts restrained or required.*

Fed. R. Civ. P. 65(d)(1) (emphasis added).

As the Supreme Court has explained, the specificity requirements of Rule 65(d) are "designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). An injunction "should clearly let defendant know what he is ordered to do or not to do." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1203 (11th Cir. 2001).  Rule 65(d)'s requirements are satisfied "only if the enjoined party can ascertain from the four corners of the order precisely what acts are forbidden or required." *Petrello v. White*, 533 F.3d 110, 114 (2d Cir. 2008); 11A Fed. Prac. & Proc. Civ. § 2955., *Form and Scope of Injunctions or Restraining Orders* (2d ed.) (The standard established by Rule 65(d) "is that an ordinary person reading the court's order should be able to ascertain from the document itself exactly" what conduct is proscribed or required).

International manufactures eight different products, all which are made up of numerous component parts.  The injunction requested by International would be impermissibly vague and broad, as it does not specify: 1) which components or products Italia must supply to

16

International; 2) the purchase orders referenced, which presumably contain the pricing information; or 3) how many components or products that Italia must supply to International.

International acknowledged during the hearing that, as to one or more components, it is currently purchasing those components from its own suppliers – not Italia. Even after presiding over the evidentiary hearing and reviewing the materials submitted by the parties, this Court does not know which specific components or products that International wishes Italia to supply to it.

In addition, International could not tell the Court how many components it would need in order to satisfy its customer's orders through May of 2016, but estimated it would need at least $600,000.00 worth of components.

Accordingly, neither Italia nor the Court would be able to ascertain from the four corners of the proposed order the acts that are required of Italia.

## IV.    In Addition, International Has Failed To Establish That It Has A Strong Likelihood Of Success On The Merits Its Breach Of Licensing Agreement Count.

International identifies its Breach of Licensing Count as the claim upon which it can show it has a strong likelihood of success on the merits. The Court applies Delaware breach of contract law to determine if International can do so. *Tenke*, 511 F.3d at 541. Under Delaware law, the elements of a breach of contract claim are: 1) a contractual obligation; 2) a breach of that contractual obligation by the defendant; and 3) resulting damage to the plaintiff. *H-M Wexford LLC v. Encorp*., Inc., 832 A.2d 129, 140 (Del. Ch. 2003).

International's motion asserts that International  can establish that Italia breached the parties' License Agreement in two ways: 1) by not transferring to International the intellectual property rights and licensed technology outlined in the License Agreement, specifically, supplier

17

information; and 2) by contacting and attempting to solicit International's customers, in violation of Paragraph 6(d) of the License Agreement.

### A.      Failure to Provide Supplier Information

The Court concludes that International has not established that it has a strong likelihood of success on the merits of its claim that Italia breached its obligations under the License Agreement by failing to provide supplier information to International.

Moreover, even if International were to ultimately prevail on the merits of its Breach of Licensing Count in this action, that would not entitle International to the injunctive relief it seeks here – a Court-created supply contract. The only relief that International has requested as to its Breach of Licensing Count is monetary damages. Thus, even if International ultimately prevails on its Breach of Licensing Agreement Count in this action, it could not obtain get the injunctive relief it is seeking now – a court order requiring Italia to provide it with components despite any contractual obligation to do so.

### B.      Communicating with Customers

Paragraph 6(d) of the Licensing Agreement provides that Italia, "*during the term of*" the Licensing Agreement "shall not, within the Territory, compete with the business of the Licensee or solicit any customer, vender or employee of" International. (Licensing Agreement at ¶ 6(d)) (emphasis added).

Italia terminated the Licensing Agreement, effective June 22, 2016. The contacts with its customers that International complains of, however, occurred months after the Licensing Agreement had been terminated. The Court therefore concludes that International is not likely to succeed with its claim that Italia breached Paragraph 6(d) of the License Agreement by

18

contacting, communicating, or soliciting its customers.[5]

## CONCLUSION & ORDER

For all of the reasons set forth above, IT IS ORDERED that International's Motion for

Preliminary Injunction is DENIED.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  January 31, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on
January 31, 2017, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager

---

[5]Additionally, even if this Court were inclined to grant the requested injunctive relief,
given International's current financial condition and the amount that it already owes to Italia,
pursuant to this Court's discretion under Fed. R. Civ. P. 65(c), this Court would require
International to provide a letter of credit in at least the amount of $600,000.00.